1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SEEGER WEISS LLP**
Jonathan Shub (SBN 237708)
1515 Market St, Suite 1380
Philadelphia, PA 19102
Telephone: (215) 564-2300
Facsimile: (215) 851-8029
jshub@seegerweiss.com

*Attorneys for Plaintiff and the*
*Proposed Class along with other counsel*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRETT GRASSI, individually and on behalf of all others similarly situated; | Case No. _____ |
| Plaintiff, | |
| v. | **CLASS ACTION COMPLAINT** |
| INTERNATIONAL COMFORT PRODUCTS, LLC, | **JURY TRIAL DEMANDED** |
| Defendant. | |

     Plaintiff Brett Grassi, by and through his undersigned counsel, on behalf of himself and all other persons similarly situated, bring this Class-Action Complaint against International Comfort Products, LLC (hereinafter "ICP") and in support thereof avers as follows:

**CLASS ACTION COMPLAINT**

**NATURE OF THE ACTION**

1.     Plaintiff brings this Class action individually and on behalf of the Class defined herein against ICP to obtain damages and injunctive relief related to ICP's sale and marketing of heating, ventilation and air conditioning units ("HVACs unit(s)") manufactured with uncoated copper evaporator and/or condenser coils (collectively "defective coils").

2.     Plaintiff commenced this action to remedy the violations of applicable law in connection with ICP's design, manufacture, marketing, warranting, and servicing of its HVAC units containing defective coils.

3.     Unknown to Plaintiff and the Class, the defective coils suffer from a defect that causes them to be particularly susceptible to developing formicary corrosion and other holes, cracks, and leaks which lead to premature failure of the coils. As the result of ICP's acts and omissions in connection with the design, manufacture, warranty, sale and delivery of HVAC units containing defective coils, Plaintiff and members of the Class are entitled to damages and equitable relief.

**THE PARTIES**

4.     At all relevant times hereto, Plaintiff, Brett Grassi is a citizen and resident of Kern County, California. In or about February 2012, Plaintiff purchased a new home that was equipped with a new Heil heating and air conditioning unit

**CLASS ACTION COMPLAINT**

1
2
3
4
5

for household purposes that was manufactured by ICP, and used this HVAC unit for its intended purpose.   Plaintiff's HVAC unit failed within ICP's warranty period, resulting in Plaintiff having to pay labor costs to service and replace defective coils in the HVAC unit.

6
7
8

5.      ICP is a citizen of Delaware with its corporate headquarters located at 650 Heil Quaker Avenue, PO Box 128, Lewisburg, TN 37091.

9
10
11
12
13

6.      ICP is in the business of manufacturing, marketing, and distributing heating, air-conditioning, and refrigeration products under several brand names, including Tempstar, Comfortmaker, Heil, Arcoaire, Day & Night, and Keeprite (collectively, "ICP brands").

14
15

**JURISDICTION AND VENUE**

16
17
18
19
20
21
22
23
24
25
26

7.      This Court has original jurisdiction over the claims asserted herein individually and on behalf of the class pursuant to 28 U.S.C. § 1332, as amended in February 2005 by the Class Action Fairness Act.   Subject matter jurisdiction is proper because: (1) the amount in controversy in this class action exceeds five million dollars, exclusive of interest and costs; and (2) a substantial number of the members of the proposed class are citizens of a state different from that of ICP. Personal jurisdiction is proper as ICP has purposefully availed itself of the privilege of conducting business activities within the State of California.

27
28

**CLASS ACTION COMPLAINT**

8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391, as a substantial part of the events giving rise to the claims asserted herein occurred in the Eastern District of California.  At all pertinent times, ICP was and is in the business of marketing, advertising, distributing, and selling products, including the defective HVAC units, throughout California and this judicial district, and nationwide, by and through various authorized dealers.  The HVAC units that form the basis of this complaint were purchased from ICP and/or from ICP's authorized dealers and placed in the stream of commerce by ICP.

9.      **Intradistrict Assignment (L.R. 3-2(b)):**  This action arises in Kern County, a county encompassed in this District, in that a substantial part of the events which give rise to the claims asserted herein occurred in Kern County, and ICP conducts business in Kern County.

## FACTS COMMON TO THE CLASS

10.     ICP holds itself out to the public as a leading manufacturer of heating and cooling systems. "Millions of residential and commercial property owners across North America, as well as around the globe, rely on heating and cooling systems from International Comfort Products, LLC."

11.     ICP has been designing, manufacturing and marketing its purported "quality systems" for more than 50 years under several brand names, including Tempstar, Comfortmaker, Heil, Arcoaire, Day & Night, and Keeprite.

**CLASS ACTION COMPLAINT**

12.    ICP represents that its "[p]roducts are made in world-class manufacturing facilities located in the U.S., Mexico and Canada."

13.    ICP also maintains that "[w]e take pride in our long history of service to the heating and air conditioning industry. And as the company has grown, we have kept focus on craftsmanship and embraced new technology to make our products more energy efficient, durable, reliable, and easier to install and maintain."

14.    A typical residential central heating and air-conditioning unit is a split system that uses refrigerant as the heat exchange fluid and has its evaporator coil, compressor and condenser coil as separate components. The compressor and condenser coil are combined as a single condensing unit mounted outdoors. The evaporator coil is mounted in a section of ductwork downstream from the condensing unit and usually located indoors. Two flexible refrigerant lines, one for gas and one for liquid, connect the components.

15.    Although the evaporator coils and condenser coils serve different functions in the system, the coils themselves are generally constructed from the same or similar materials, i.e., copper tubing with fins.

**CLASS ACTION COMPLAINT**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

16.    The diagrams below depict a typical split air-conditioning system:




17.    The evaporator coil is the starting point of the refrigerant cycle. High-pressure liquid refrigerant is throttled to the evaporator through a thermostatic expansion valve.  Because the liquid is throttled, the pressure in the evaporator coil is less than the saturation pressure of the entering liquid refrigerant.  This causes the liquid refrigerant to boil. The heat needed to boil refrigerant is drawn from the medium surrounding the evaporator, usually air or water.

18.    The evaporator coil can be considered the point of heat capture in an HVAC unit. Heat from the water or air stream used to cool the building is transferred to the refrigerant gas leaving the evaporator.

19.    In most HVAC units, the evaporator coil is a direct-expansion, finned tubular coil that has refrigerant inside its tubes. After the compressor and condenser have turned the refrigerant into a cool liquid under very intense

**CLASS ACTION COMPLAINT**

pressure, the evaporator coil allows the liquid to evaporate, which extracts heat from the surrounding air, thus lowering the air temperature.  A fan draws air across the finned exterior of the tubes and delivers it to the spaces being air conditioned.

20.    ICP advertises that the use of copper coils in its HVAC units "assures you of optimum performance."    However, ICP's defective evaporator and condenser coils' performance is anything *but* optimal.  Instead, the defective coils prematurely fail and begin to leak refrigerant, ultimately requiring replacement.

21.    The reason for the premature failure is that air-conditioner manufacturers, like ICP, have traditionally manufactured evaporator and condenser coils using copper tubing with aluminum fins mounted in a galvanized steel frame. But copper is uniquely susceptible to a type of degradation known as "formicary corrosion."

22.    Formicary corrosion is caused by a chemical reaction between molecules known as volatile organic compounds and an HVAC unit's copper tubes that results in microscopic tunnels forming within the tubing.  These tunnels are what allow refrigerant to leak.

23.    Volatile organic compounds are a large group of carbon-based chemicals that derive from a host of common household products and activities. For example, volatile organic compounds are given off by composite wood furniture and flooring; carpeting, cleaning, and disinfecting products; air fresheners; cosmetics; pesticides; and numerous other consumer products.

**CLASS ACTION COMPLAINT**

Household chemicals such as Formaldehyde can be converted to formic acid and then to formate in moisture. Acetic acid is converted to acetate in water. All of these compounds are aggressive to copper, resulting in the "ant's nest" corrosion footprint.

24.     Formicary corrosion is especially insidious in the defective coils because the source of the leakage is difficult to detect and usually results in consumers being forced to repeatedly refill their air conditioners with refrigerant, often at significant cost, which masks the defect for a period of time until the evaporator or condenser coil completely fails.

25.     Modern buildings are typically made more energy efficient by improved sealing of windows and doors, which results in less heated/cooled air escaping the structure.  A natural and foreseeable result of this increase in energy efficiency is that volatile organic compounds accumulate in greater quantities in modern homes.

26.     In a report titled *Indoor Coil Corrosion, Identifying Common Sources,* ICP's parent company, Carrier, acknowledged that "indoor coil corrosion failures" were an "industry wide" problem.  ("Exhibit A").

27.     The 2007 Industry Report cited an industry study, G. Tetley, M. Heidenreich and K. Smith, "The Basics of Formicary Corrosion," *The Air-conditioning, Heating & Refrigeration News*, March 30, 1998, pp. 5-6, that found "identical corrosion failure leaks in all coil brands investigated." ("Exhibit A").

**CLASS ACTION COMPLAINT**

The study contained the following photos depicting "magnified tubing cross-sections from failed coils," and described the photos as showing that, "[t]he progression of the corrosion is from the exterior of the tube inward, eating away at the copper, until penetration occurs and a leak results. **Due to the corrosion process, some photos look better than others, but all corroded through the tube causing a leak at that point. All coils failed in the time period characteristic of such a failure."** (emphasis in original).



28.    ICP was one of the manufacturers represented in the photos above.

29.    The 2007 Industry Report stressed the "fact that many manufacturers are experiencing identical failures, shows that external environmental factors are playing a role" in the development formicary corrosion.

**CLASS ACTION COMPLAINT**

30.    Although the "potential sources of agents that can cause pitting corrosion in indoor coils are numerous," the 2007 Industry Report stressed that "there is increasing evidence showing the home environment to be a primary contributor to coil corrosion." The trend in home construction is to improve energy efficiency by making homes "tighter." This "decreased ventilation results in higher concentration levels of indoor contaminants. In addition, environmental refrigerant mandates now heighten the awareness that all leaks be located and repaired."

31.    Upon information and belief, formicary corrosion and premature coil failure is more prevalent in evaporator coils than condenser coils, possibly in part due to the greater fluctuation of temperatures within the coils under normal operating conditions, but copper condenser coils also suffer from premature failure. Environmental contaminants, as well as structural and design defects corrode the coils, lead to the foreseeable and premature failure of both types of coils.

32.    A number of HVAC contractors have expressed concern over the increasing incidence of formicary corrosion in HVAC coils. ("Exhibit B").

33.    There are clearly recognized design and manufacturing techniques available to HVAC unit manufacturers to reduce or prevent incidence of formicary corrosion.  For example, coils can be manufactured from aluminum, which is not susceptible to formicary corrosion, or copper coils can be coated with a polymer sealant or tin plating.  Indeed, Carrier released an updated Industry Report in 2011,

**CLASS ACTION COMPLAINT**

which indicated that it are now offering aluminum coils that are "significantly more resistant [to formicary corrosion] than traditional copper" ("Exhibit C").

## FACTS COMMON TO ALL CLASS MEMBERS

34.    Despite being aware of the susceptibility of the defective coils to formicary corrosion, the increasing incidence of formicary corrosion in modern homes, and the availability of commercially feasible alternative designs and materials, ICP continues to design, manufacture, distribute, market, and sell HVAC units containing defective coils to unsuspecting consumers, including Plaintiff and Class Members.

35.    The ICP evaporator and condenser coils are defective because this Company continues to use them in its HVAC units despite industry-wide knowledge that copper coils are particularly susceptible to formicary corrosion, which makes ICP's defective coils prone to premature corrosion, rupture and/or refrigerant leaks under normal use and conditions.

36.    Upon information and belief, ICP has not informed its customers of its evaporator coils' susceptibility to formicary corrosion nor of the current availability of replacement coils that are not susceptible to formicary corrosion. ICP knew, or reasonably should have known, that the uncoated copper evaporator coils in its HVAC units were unreasonably susceptible to formicary corrosion and thus defective; however, ICP failed or refused to properly inform consumers of the defect or initiate other similar action.

**CLASS ACTION COMPLAINT**

37.     In addition, The Clean Air Act of 1990 mandated a gradual phase out of the use of R-22 refrigerant in HVAC units.  In 2009, the EPA banned the sale or distribution of HVAC units containing or requiring R-22 beginning January 1, 2010.  Alternative refrigerants, such as R-410A, which are more environmentally friendly and more energy efficient, are required to be used instead of R-22 in HVAC units sold in 2010 or after.  However, these alternative refrigerants operate at higher pressures than R-22.  For example, R-410A operates at up to a 50% higher pressure than R-22, resulting in a higher likelihood that the coils will prematurely fail due to known defects.

38.     ICP's HVAC units were designed with and manufactured using defective coils that were not suitable for their intended purpose, in that they corroded, cracked and/or prematurely leaked when either R-22 refrigerant or when the higher pressure R-410A refrigerant was used.

39.     ICP has not properly informed its customers about the causes of formicary corrosion, even when replacing defective coils, which information would allow customers to make an informed decision about the risks associated with purchasing one of ICP's HVAC units.

40.     ICP's HVAC units fail within the warranty period, rendering them unfit for their intended purpose.  When an ICP HVAC unit leaks, it does not blow properly conditioned cold or hot air, depending upon season.

**CLASS ACTION COMPLAINT**

41.     When ICP purported to "repair" defective HVAC units during the warranty period, ICP frequently replaces the defective uncoated copper coils with an equally defective uncoated copper coils, although upon information and belief, at some point ICP began offering an aluminum coil option.

42.     Because ICP knew about the defects in its copper coils and failed to timely honor its express and implied warranties, ICP's warranty failed in its essential purpose, meaning the inconspicuous limitations expressed in these warranties are null and void.

43.     Despite knowing about its defective coils, ICP has neither notified affected purchasers, builders, or homeowners about the problem nor provided them adequate relief.

44.     Plaintiff and class members have not received the value for which they bargained when ICP's HVAC units were purchased. There is a difference in value between the ICP's HVAC unit as represented and in its actual defective condition.

## FACTS SPECIFIC TO PLAINTIFF

45.     In or about February 2012, Plaintiff purchased new home that contained a Heil HVAC unit.  Plaintiff is the original owner of the home, and the first owner of the HVAC unit.

46.     In May 2014, Plaintiff's HVAC unit stopped blowing cold air when in air conditioning mode.

**CLASS ACTION COMPLAINT**

47.     An air conditioning technician, American Dream Services, came out on May 19, 2014, performed a leak check on Plaintiff's HVAC unit, and discovered a leak in Plaintiff's copper evaporator coil.  Plaintiff paid $892.00 to diagnose this leak.

48.     On May 19, 2014, Plaintiff notified ICP of the leak and opened a complaint.  ICP stated to Plaintiff that they would cover the cost of the replacement coil itself, but Plaintiff would be responsible for the labor costs to replace the defective coil.

49.     In June 2014, Plaintiff notified his builder, McMillan, of the problem with his HVAC unit.  McMillan stated that they would cover half of the labor costs if Plaintiff had the labor work done by an HVAC technician.

50.     In 2014, the HVAC technician replaced Plaintiff's copper evaporator coil with an aluminum coil.   Plaintiff paid approximately $521.50, which represented half of the total cost of labor to replace the defective coil.

51.     It was not until ICP refused to offer a reasonable means of resolving this problem that Plaintiff began to do further research regarding the problems he was experiencing with his HVAC system. He discovered that his ICP HVAC unit was actually defective.

52.     Plaintiff did not and could not reasonably have discovered the defective coil at the time of delivery.

**CLASS ACTION COMPLAINT**

53.     Plaintiff is within the applicable statute of limitations for the claims presented hereunder.

54.     Plaintiff has brought the warranty claim prior to the expiration of the warranty.

55.     Plaintiff also asserts that this action has been filed within all applicable time frames from the date of initial use of his HVAC unit.

## **TOLLING**

56.     **Discovery Rule**. Plaintiff's claims accrued upon discovery that his HVAC unit was failing to produce cold air as a result of copper coils that leaked. Because ICP concealed the fact that its HVAC units are defective, Plaintiff could not have discovered this fact through reasonable and diligent investigation until after he experienced the effects of a failure, could reasonably exclude other potential causes of the problems, and learned that the defect in the HVAC unit caused the problem.

57.     **Active Concealment Tolling**.  The statute of limitations is tolled by ICP's knowing and active concealment of the fact that its HVAC units contain copper coils that are prone to premature failure.  ICP kept Plaintiff ignorant of vital information essential to the pursuit of his claim, without any fault or lack of diligence on the part of Plaintiff.  Plaintiff could not reasonably have discovered

**CLASS ACTION COMPLAINT**

the fact that his HVAC unit contained defective coils that would leak due to the defect.

58.   **Estoppel**. ICP was and is under a continuous duty to disclose to Plaintiff the true character, quality, and nature of its HVAC Units.  At all relevant times, and continuing to this day, ICP knowingly, affirmatively, and actively misrepresented and concealed the true character, quality, and nature of the defective HVAC units.  Plaintiff reasonably relied to his detriment upon ICP's affirmative misrepresentations and knowing, affirmative, and/or active concealment.  Based on the foregoing, ICP is estopped from relying on any statutes of limitation in defense of this action.

## CLASS ACTION ALLEGATIONS

59.   Description of the Class:  The Class that Plaintiff seeks to represent are defined as follows:

All people residing in California who purchased—primarily for personal, family, or household purposes and not for resale—an air-conditioning unit containing a copper evaporator and/or condenser coil designed, manufactured, distributed, marketed, sold, warranted, or serviced by Defendant or a copper evaporator and/or condenser coil designed, manufactured, distributed, marketed, sold, warranted, or serviced by Defendant as defined by California Civil Code 1791(a).

60.   Excluded from the Class are governmental entities, ICP, any entity in which ICP has a controlling interest, and ICP's officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns.

**CLASS ACTION COMPLAINT**

Also excluded from the Class is any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

61.    Plaintiff reserves the right to modify the Class descriptions and the Class period based on the results of discovery.

62.    Plaintiff and the Class bring this action for compensatory, and equitable relief pursuant to subdivisions (b)(1), (b)(2) and (b)(3) of Rule 23 of the Federal Rules of Civil Procedure.

63.    <u>Numerosity</u>:   The proposed Class is so numerous that individual joinder of all its members is impracticable.  The total number of Class members is at least in the hundreds and members of the class are geographically dispersed across California.  While the exact number and identities of the Class members are unknown at this time, such information can be ascertained through appropriate investigation and discovery.  The disposition of the claims of the Class members in a single class action will provide substantial benefits to all parties and to the Court.

64.    <u>Common Questions of Law and Fact Predominate</u>:   There are questions of law and fact common to the representative Plaintiff and the Class, and those questions substantially predominate over any questions that may affect individual Class members.  Common questions of fact and law include, but are not limited to, the following:

(a)    Whether ICP's HVAC units are defectively designed or manufactured;

**CLASS ACTION COMPLAINT**

1

2

      (b)      Whether ICP's copper evaporator and/or condenser coils are defectively designed or manufactured;

3

4

      (c)      Whether ICP knew or should have known about the defective coils before distributing its HVAC units to Plaintiff and class members;

5

6

      (d)      Whether ICP made material omissions or misrepresentations;

7

8

9

      (e)      Whether ICP's HVAC units have not performed in accordance with the reasonable expectations of ordinary consumers;

10

11

      (f)      Whether ICP concealed the aforementioned defects from Plaintiff and class members;

12

13

      (g)      Whether ICP breached its express warranty to Plaintiff and class members;

14

15

      (h)      Whether ICP's written warranties were unconscionable or failed in their essential purpose;

16

17

18

      (i)      Whether ICP's conduct constitutes deceptive, unfair and/or oppressive conduct as defined under the California Unfair Competition Law;

19

20

      (j)      Whether ICP's conduct constitutes deceptive, unfair and/or oppressive conduct as defined under the California Consumer Legal Remedies Act;

21

22

23

      (k)      Whether ICP engaged in illegal business practices by failing to recall or effectively repair the HVAC units without charging Plaintiff and the Class;

24

25

      (l)      Whether ICP breached its duty of good faith and fair dealing;

26

27

28

      (m)      Whether ICP failed to warn Plaintiff and class members of potential defects or omitted critical information in its marketing and sales materials;

**CLASS ACTION COMPLAINT**

(n)   Whether ICP was unjustly enriched by receiving money in exchange for HVAC units that were defective;

(o)   Whether ICP should be ordered to disgorge all or part of the ill-gotten profits it received from the sale of defective HVAC units;

(p)   Whether Plaintiff and class members are entitled to compensatory, exemplary, and/or statutory damages;

(q)   Whether ICP should be enjoined from selling and marketing its defective HVAC units; and

(r)   Whether Plaintiff and class members of the Class are entitled to declaratory relief.

65.   <u>Typicality</u>:   Plaintiff's claims are typical of the claims of the members of the Class.  Plaintiff and all members of the Class have been similarly affected by ICP's common course of conduct since they all have purchased ICP HVAC systems which have had evaporator and/or condenser coils which prematurely and require Plaintiff and members of the Class to spend money on expensive repairs.

66.   <u>Adequacy of Representation</u>:   Plaintiff will fairly and adequately represent and protect the interests of the Class.  Plaintiff has retained counsel with substantial experience in prosecuting complex and class action litigation.  Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the Class, and have the financial resources to do so.  Neither Plaintiff nor his counsel has any interests adverse to those of the Class.

**CLASS ACTION COMPLAINT**

67.     <u>Superiority of a Class Action</u>:   Plaintiff and the members of the Class suffered, and will continue to suffer, harm as a result of ICP's unlawful and wrongful conduct.  A class action is superior to other available methods for the fair and efficient adjudication of the present controversy.   Individual joinder of all members of the class is impractical.  While the aggregate damages sustained by the Class are likely in the millions of dollars, the individual damages incurred by each Class member are too small to warrant the expense of individual suits.  Even if individual class members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed.  Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies engendered by ICP's common course of conduct.  The class action device allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and equitable handling of all class members' claims in a single forum. The conduct of this action as a class action conserves the resources of the parties and of the judicial system, and protects the rights of the class member. Furthermore, for many, if not most, class members, a class action is the only feasible mechanism that allows therein an opportunity for legal redress and justice.

68.     Adjudication of individual class members' claims with respect to the ICP would, as a practical matter, be dispositive of the interests of other members

**CLASS ACTION COMPLAINT**

not parties to the adjudication, and could substantially impair or impede the ability of other class members to protect their interests.

69.    Plaintiff does not anticipate any difficulty in the management of this litigation.

70.    ICP has, or has access to, address information for the Class members, which may be used for the purpose of providing notice of the pendency of this action.

## THE PURPORTED WARRANTY LIMITATIONS ARE VOID AND INVALID

71.    The HVAC units are covered by ICP's five-year limited "parts" warranty. This warranty expands to a ten-year limited "parts" warranty if it is properly registered within ninety days after the HVAC unit's original installation.

72.    However, even if a consumer's HVAC unit fails within ICP's warranty period, ICP refuses to cover the cost of labor to replace the defective coil and refuses to cover associated costs for diagnostics, inspection and refrigerant replacement, which represent the major costs of such a repair.

73.    ICP's warranty fails in its essential purpose because none of the remedies offered by ICP give purchasers the benefit of their bargain, i.e., a merchantable HVAC unit.

**CLASS ACTION COMPLAINT**

74.   ICP's limited "parts" warranty is ineffective because the company sold HVAC units that were unreasonably susceptible to formicary corrosion, which the limited warranty fails to sufficiently address.

75.   ICP's warranty disclaimer is also ineffective because it is not provided to purchasers of its HVAC units before or at the time of purchase. Purchasers only learn of such purported disclaimers at the time of their products' *installation*, meaning these limitations cannot be considered part of Plaintiff's or class members' bargain.

## FIRST CAUSE OF ACTION
### (Violation of Consumers Legal Remedies Act)

76.   Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

77.   The California Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq*. ("CLRA") prohibits "unfair or deceptive acts or practices."

78.   Plaintiff and other Class members are consumers within the meaning of the CLRA given that ICP's business activities involve trade or commerce, are addressed to the consumer market generally, and otherwise implicate consumer protection concerns.  Plaintiff and other Class members have used the HVAC units for personal, family and/or household purposes.

79.   The acts and practices of ICP as described above were intended to deceive Plaintiff and the Class members as described herein and have resulted and

**CLASS ACTION COMPLAINT**

will result in damages to Plaintiff and the Class members.  These actions violated and continue to violate the CLRA in at least the following respects:

(a)     In violation of § 1770(a)(5) of the CLRA, ICP's acts and practices constitute representations that the HVAC units have characteristics, uses and/or benefits which they does not;

(b)     In violation of § 1770(a)(7) of the CLRA, ICP's acts and practices constitute representations that the HVAC units are of a particular quality which they are not; and

(c)     In violation of § 1770(a)(9) of the CLRA, ICP's acts and practices constitute the advertisement of the HVAC units in question without the intent to sell them as advertised.

80.     By reason of the foregoing, Plaintiff and the California Class members have been irreparably harmed.

81.     By committing the acts alleged above, ICPs violated the CLRA.

82.     In compliance with the provisions of California Civil Code § 1782, contemporaneous with the filing of this Complaint, Plaintiff notified ICP in writing of the particular violations of § 1770 of the Act and demanded ICP to rectify the actions described above by refunding the purchase price and give notice to all affected consumers of their intent to do so.  Plaintiff sent this notice by certified mail, return receipt requested, to ICP's principal place of business.

83.     Should ICP fail to adequately respond to Plaintiff's demand to rectify the wrongful conduct described above on behalf of all Class members within thirty

**CLASS ACTION COMPLAINT**

days after receipt of the § 1782 notice, Plaintiff will amend his complaint and seek

actual and punitive damages against ICP for violations of the CLRA on behalf of

themselves and the California Class.

84.     Plaintiff and Class members are entitled, pursuant to California Civil

Code §§ 1780(a)(2) and (3), to an order: (1) enjoining the above-described

wrongful acts and practices; and (2) requiring the repair or replacement of

Plaintiff's and the Class' defective HVAC units.  Plaintiff and the Class are also

entitled to the payment of costs and attorneys' fees and any other relief deemed

appropriate and proper by the Court under California Civil Code § 1780(e).

**SECOND CAUSE OF ACTION**
**(VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW)**

85.     Plaintiff realleges the preceding paragraphs as if fully set forth herein

and, to the extent necessary, pleads this cause of action in the alternative.

86.     Any conduct that is unlawful, unfair or deceptive constitutes a

violation of the California Unfair Competition Law, Business and Professions

Code §17200, *et seq*. (the "UCL").

87.     ICP's practices as alleged in this complaint constitute unlawful,

unfair, and fraudulent business practices under the UCL, Bus. & Prof. Code §§

17200 *et seq*.

88.     ICP committed unlawful and/or unfair business practices by:

a.     Engaging in conduct, as alleged herein, that violates the CLRA,

Cal. Civil Code §§ 1750 *et seq*.;

b.       Engaging in conduct, as alleged herein, that violates the Magnuson-Moss Warranty Act, 15 U.S. C. §§ 2301 *et seq*.;

c.       Engaging in conduct, as alleged herein, that breaches its Express Warranties.

d.       Engaging in conduct where the utility of such conduct, if any is outweighed by the gravity of the consequences to Plaintiff and the Class.

e.       Engaging in conduct that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiff and the Class; and

f.       Engaging in conduct that undermines or violates the stated policies underlying the CLRA, Civ. Code §§ 1750 *et seq*.; the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 *et seq*.; and the False Advertising Law, Cal. Bus. and Prof. Code §§ 17500 *et seq*., each of which seeking to protect consumers against unfair and sharp business practices and to promote a basic level of honesty and reliability in the marketplace, and thus provide a sufficient predicate for Plaintiff's and the Class' claims for unfair business practices.

89.    Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact as a result of ICP's actions.

90.    Plaintiff and the Class paid a premium price for their ICP HVAC units expecting high quality and a functioning unit with adequate coils. Nevertheless, the HVAC units contain copper coils that prematurely fail rendering the HVAC

**CLASS ACTION COMPLAINT**

units unable to produce properly conditioned cold or hot air.  Plaintiff and the Class thus did not obtain the value of the product for which they paid.

91.    The violation of any law constitutes an unlawful business practice under the UCL.

92.    As detailed more fully in the following paragraphs, the acts and practices alleged herein were intended to and did result in the sale of HVAC units in violation of the UCL.  ICP's conduct further constitutes breach of warranty, breach of the implied covenant of good faith and fair dealing and unjust enrichment.

93.    By violating these legal duties, ICP has engaged in unlawful business acts and practices which constitute unfair competition within the UCL.

94.    ICP actively and extensively advertises, markets and promotes its HVAC units based on promises that they are "durable, reliable, and easier to install and maintain."

95.    Throughout the class period, ICP maintained a website and published marketing materials that are the primary tools for advertising and marketing the HVAC units.

96.    Plaintiff and the Class purchased ICP's HVAC units.  When doing so, Plaintiff and the Class reviewed and relied on the representations as detailed above. Nevertheless, the HVAC units they purchased failed prematurely and were unable

**CLASS ACTION COMPLAINT**

to be used as intended.   In addition, the warranty repairs made by ICP were ineffective and merely delayed the ultimate complete failure of the HVAC units.

97.   Plaintiff and the Class contacted ICP and/or authorized dealers to request repairs, but the repairs did not fix the problem, and their HVAC units continue to fail to operate properly and leak refrigerant.

98.   ICP intended that Plaintiff and the Class would rely on ICP's omissions of material facts when purchasing their HVAC units.   This conduct constitutes consumer fraud, an unfair business practice and violation of the UCL. Had Plaintiff and the Class known about the defective coils they would not have purchased the HVAC units.

99.   Both ICP's failure to disclose the HVAC units' propensity to fail prematurely, along with its ineffective repairs which do not prevent the ultimate failure of the HVAC units, had the effect of deceiving the Plaintiff and the Class. ICP has thus committed deceptive acts or practices within the meaning of the UCL.

100.   Under the UCL any business act or practice that is unethical, oppressive, unscrupulous and/or substantially injurious to consumers, or that violates a legislatively declared policy, constitutes an unfair business act or practice.

101.   ICP's conduct adversely affects the public interest and is a proximate cause of injury and money damages to Plaintiff and the Class in an amount to be proven at trial.   ICP is liable to Plaintiff and the Class for all appropriate damages

**CLASS ACTION COMPLAINT**

allowed under the law, costs and attorneys' fees, including as private attorney

generals under Cal. Code Civ. Proc. §1021.5.

**THIRD CAUSE OF ACTION**
**(VIOLATION OF CALIFORNIA FALSE ADVERTISING ACT)**

102.   Plaintiff realleges the preceding paragraphs as if fully set forth herein

and, to the extent necessary, pleads this cause of action in the alternative.

103.   California Business & Professional Code § 17500, *et seq.*, prohibits

false advertising.

104.   ICP is a "person" as defined under Cal. Bus. & Prof. Code § 17506.

105.   ICP falsely advertised the performance, uses, benefits, characteristics,

quality, grade and standard of the HVAC units containing defective copper coils by

omission and misrepresentation as alleged herein.

106.   ICP's misrepresentations and omissions, as described more fully

above, did deceive, and are likely to deceive Plaintiff and the Class.

107.   Plaintiff and the Class relied upon these material misrepresentations

and omissions to their detriment in that they would not have purchased the HVAC

units had they known the information ICP withheld from them.

108.   The above-described false and misleading advertising conducted by

ICP continues to this day and presents a threat to the general public in that ICP has

not acknowledged its wrongdoing to consumers or publicly issued an appropriate

conspicuous notice to existing or prospective purchasers of its HVAC units, and

— 28 —

**CLASS ACTION COMPLAINT**

1  has not disclosed the existence of their defective condition, which resulted in

2  Plaintiff and the Class being deceived and misled.

3

4       109.  As a result of the above-described conduct, ICP has been and will

5  continue to be unjustly enriched at the expense of Plaintiff and the Class.

6       110.  Pursuant to Cal. Bus. & Prof. Code §§ 17203 and 17535, Plaintiff and

7  the Class seek an order: 1) requiring ICP to immediately cease the unlawful, unfair,

8  and/ or fraudulent business acts and/or practices and false and misleading

9

10  advertising complained of herein; 2) enjoining ICP from continuing to

11  misrepresent the HVAC units' uses, benefits, characteristics, standard, quality and

12  grade by omitting from its labels, advertising and communications regarding the

13

14  HVAC units that their defective condition causes problems to develop which

15  render the HVAC unit unable to produce properly conditioned cold or hot air, and

16  requires HVAC unit owners to pay for ineffective repairs; and 3) requiring ICP to

17  repair or replace the HVAC units so that they do not develop the above-described

18

19  problems; or to provide full restitution to the Plaintiff and Class members of all

20  monies wrongfully acquired by means of such acts of unfair competition and false

21  advertising, plus interest, costs, and attorneys' fees.

22

23

24  **FOURTH CAUSE OF ACTION**
   **(BREACH OF IMPLIED COVENANT OF GOOD FAITH**
   **AND FAIR DEALING)**

25

26

27

28

**CLASS ACTION COMPLAINT**

1    111.   Plaintiff realleges the preceding paragraphs as if fully set forth herein

2    and, to the extent necessary, pleads this cause of action in the alternative.

3
4    112.   The covenant of good faith and fair dealing prohibits ICP from taking

5    any action that would have the effect of depriving Plaintiff and the Class from

6    receiving the full benefits of their purchase.

7
8    113.   ICP has breached the implied covenant of good faith and fair dealing

9    by failing to provide adequate notice to Plaintiff and the Class that their HVAC

10   units prematurely fail due to the defective evaporator and or condenser coils.

11
12   Plaintiff and the Class reasonably expect that when they purchase an HVAC unit, it

13   will produce cold or hot air properly without developing a leak or leaks in the

14   coils.   Plaintiff and the Class also reasonably expect that when ICP and/or its

15
16   authorized retailers attempt to repair the HVAC units, the problem will not keep

17   recurring in the future. By failing to provide adequate notice to Plaintiff and the

18   Class regarding the defective condition of its HVAC units, ICP deprives them of

19
20   the ability to obtain the benefits of their purchases.

21   114.   As a direct and proximate result of ICP's breach of the implied

22   covenant of good faith and fair dealing, Plaintiff and the Class have been damaged

23
24   in that they purchased HVAC units that they would not have purchased.

25                           **FIFTH CAUSE OF ACTION**
                         **(BREACH OF IMPLIED WARRANTIES**
26   **UNDER THE SONG-BEVERLY CONSUMER WARRANTY ACT)**

27

28

**CLASS ACTION COMPLAINT**

115.   Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, plead this cause of action in the alternative.

116.   Plaintiff seeks to recover for the Class based on ICP's breach of implied warranty under the Song-Beverly Consumer Warranty Act.

117.   ICP marketed and sold the HVAC units, which it placed into the stream of commerce.  ICP knew or had reason to know of the specific use for which the HVAC units were purchased, and it impliedly warranted that the HVAC units were of merchantable quality and fit for such use.

118.   Plaintiff and the other Class members relied on ICP's representations and omissions as described above and relied upon ICP's implied warranties in purchasing the HVAC units.

119.   Plaintiff's and the Class' HVAC units were not of merchantable quality and became unfit for their ordinary purpose because ICP's design and/or manufacturing Defects discussed above render the HVAC units incapable of producing properly conditioned cold or hot air.

120.   Plaintiff's and the Class' HVAC units do not conform to the promises or affirmations of fact made in advertising and marketing materials about the HVAC units' delivery of "deliver excellent efficiency, reliability and proven performance."

121.   ICP's waiver and/or limits on implied warranties are unconscionable, unenforceable, and/or illegal.  Plaintiff and the Class had no meaningful choice in

**CLASS ACTION COMPLAINT**

1
2
3
4
5
6
7
8
9
10
11
12

determining those time limitations; the warranties were written by ICP without input from Plaintiff; the Warranty overwhelmingly favors ICP by unreasonably limiting the warranty to five or ten years on a product that should reasonably be expected to last 15 or more years; a gross disparity in bargaining power existed as between ICP and Plaintiff and Class Members; ICP knew or should have known that its HVAC units were defective at the time of sale and would develop leaks before the end of their useful lives, and Plaintiff and the Class were unfairly surprised by the warranty's limitations upon discovering that ICP knew the HVAC units' problems.

13
14
15
16
17
18

122.   Plaintiff's and the Class' HVAC units became unfit for its ordinary purpose of providing properly conditioned cool or hot air within the implied warranty period because their HVAC units either began leaking refrigerant and/or failed completely so that they stopped producing properly conditioned cold or hot air.

19
20
21
22
23
24

123.   Plaintiff and the other Class members have been damaged as described herein as a direct and proximate result of the failure of ICP to honor its implied warranty as Plaintiff and the Class would not have purchased their HVAC units had they had they known about their defective condition.

25
26

**SIXTH CAUSE OF ACTION
(BREACH OF EXPRESS WARRANTIES)**

27
28

**CLASS ACTION COMPLAINT**

124.   Plaintiff incorporates the allegations set forth in the preceding paragraphs of this Complaint as if set forth in this Count.

125.   By promising in its user manuals, website, brochures, specifications, and models working air conditioners that necessarily included working evaporator and condenser coils, ICP expressly warranted to Plaintiff and the Class (i.e., made an affirmation of fact or a promise through advertising, made a quality- or merits-based representation) that its HVAC units would work as promised. ICP's express warranty of its HVAC units was part of the basis of the parties' bargain.

126.   As a company whose revenues are driven significantly by consumer purchases, ICP aimed its representations directly at consumers like the Plaintiff and the Class, urging them to purchase its HVAC units.

127.   ICP breached its express warranty because ICP's HVAC units did not work as expressly promised. Specifically, they were defective in that their copper coils were inherently susceptible to formicary corrosion and failure, thus rendering the HVAC units unfit for their ordinary use.

128.   Relying on ICP's representations, Plaintiff and the Class purchased their HVAC units under the mistaken belief that they would not prematurely fail as they did.

129.   Plaintiff and the Class suffered damages as a result of ICP's breach of its express warranties in that: (a) they paid a price premium due to ICP's misrepresentations and omissions of material fact concerning the marketing and

advertising relating the HVAC units; (b) ICP's HVAC units did not have the attributes or value that ICP promised; and (c) they were required to pay to repair and/or replace the defective HVAC units.

**SEVENTH CAUSE OF ACTION**
**(UNJUST ENRICHMENT)**

130.   Plaintiff incorporates the allegations set forth in the preceding paragraphs of this Complaint as if set forth in this Count.

131.   Plaintiff and the Class conferred a benefit upon ICP, namely, by paying money for their defective HVAC units.

132.   ICP retained those funds with knowledge and under circumstances that make it inequitable for it to do. Specifically, ICP retained these funds without providing Plaintiff and the Class with reliable, non-defective HVAC units.

133.   Plaintiff and the Class purchased ICP's HVAC units from ICP's agents, in part, because of ICP's advertisements, marketing, and product claims (as well as because of the fact that ICP does not sell to consumers), thus creating a relationship between the parties despite the fact that Plaintiff and the Class did not purchase their HVAC units directly from ICP.

134.   Through marketing, advertising, product packaging, and print publications, specifically designed to entice Plaintiff and the Class to buy its products, ICP misrepresented that its HVAC units were free from defects.

**CLASS ACTION COMPLAINT**

135.   As the result of their purchases of defective HVAC units, ICP has received and retained a benefit from Plaintiff and the Class (i.e., the purchase price) under circumstances where it would be unjust to do so.

## EIGHTH CAUSE OF ACTION
## (FRAUDULENT CONCEALMENT)

136.  Plaintiff incorporates the allegations set forth in the preceding paragraphs of this Complaint as if set forth in this Count.

137.   ICP made a false representation or concealment of fact concerning the qualities of the HVAC units, or in the face of a duty to disclose, concealed the material fact of their defective condition from Plaintiff and the Class.

138.   ICP knew or should have known that its HVAC units were defectively designed; were not fit for their ordinary and intended use; and failed to perform in accordance with ICP's advertisements, marketing materials, or warranties.

139.   ICP had exclusive knowledge of the defective condition of the HVAC units at the time they were purchased by Plaintiff and the Class. The defective condition of the HVAC units is latent and not something that, in the exercise of reasonable diligence, could or should have discovered before purchase by Plaintiff and the Class.

140.   ICP undertook active and ongoing steps to conceal the defective condition of the HVAC units, and Plaintiff and the Class are not aware of any ICP

**CLASS ACTION COMPLAINT**

advertising, publicity, or marketing materials that disclosed the truth about the defective condition of the HVAC units, despite ICP's knowledge of the problem.

141.   These false representations and/or concealed facts were material to ICP's transaction with Plaintiff and the Class because they could be reasonably anticipated to affect consumers' decisions whether to purchase the defective HVAC units.

142.   ICP intentionally concealed or failed to disclose these material facts for the purpose of inducing Plaintiff and the Class to purchase its defective HVAC units.

143.   ICP made these misrepresentations and/or omissions with knowledge of their falsity, or with such utter disregard and recklessness as to whether they were true that knowledge may be inferred.

144.   ICP made these misrepresentations and/or omissions with the intent of causing Plaintiff and the Class to rely on them.

145.   Plaintiff and the Class justifiably relied on ICP's misrepresentations and/or omissions and were proximately injured by their reliance because: (a) they would not have purchased the HVAC units if the true facts concerning their defective condition had been known; (b) they paid a price premium for the HVAC units; and (c) their HVAC units did not perform as ICP promised.  Plaintiff and the Class also would have initiated this suit earlier had the defective condition of the HVAC units been disclosed to them.

## NINTH CAUSE OF ACTION
### (DECLARATORY RELIEF)

146.   Plaintiff incorporates the allegations set forth in the preceding paragraphs of this Complaint as if set forth in this Count.

147.   An actual controversy exists between Plaintiff, the Class and ICP regarding the marketing and sale of the ICP's defective HVAC units.

148.   Pursuant to 28 U.S.C. § 2201, this Court may "declare the rights and legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

149.   ICP marketed, sold, and continues to market and sell, defective HVAC units, while concealing their defective condition from consumers.

150.   ICP has acted or refused to act in such manner as final injunctive relief or corresponding declaratory relief is appropriate respecting the Plaintiff and Class as a whole, pursuant to Fed. R. Civ. P. 23(b)(2).

151.   To this end, Plaintiff and the Class seek an Order declaring that:

(a)     ICP's HVAC units contain defective copper coils that are inherently susceptible to formicary corrosion and prematurely fail;

(b)     Certain parts and limitations of ICP's warranty are unconscionable and void because they fail in their essential purpose;

(c)     ICP must notify HVAC unit owners of the defective condition of its HVAC units;

(d)     The ICP's warranty's durational limitations are removed;

**CLASS ACTION COMPLAINT**

1
2
     (e)    ICP will reassess all earlier warranty claims and pay the full cost of repairs and damages;

3
4
     (f)    At its own cost, ICP will replace any class member's copper coil with a non-copper coil;

5
6
     (g)    ICP will pay the cost of inspection to determine whether any class members' copper coils need replacement; and

7
8
     (h)    Any limitations of damages or disclaimer of warranty by ICP with regard to its defective HVAC units are void.

9
10
## **PRAYER FOR RELIEF**

11
12
13
WHEREFORE, Plaintiff, on behalf of himself and others similarly situated, seeks judgment against ICP as follows:

14
15
16
A.    An order certifying the class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the class and his attorneys as class counsel;

17
B.    An order finding in favor of Plaintiff and on all counts asserted;

18
19
C.    An order awarding damages in an amount to be determined by the Court or jury;

20
D.    An order for prejudgment interest on all amounts awarded;

21
22
E.    An order of restitution and all other forms of injunctive or equitable relief;

23
24
F.    An order awarding Plaintiff and the class reasonable attorneys' fees, expenses, and costs of suit; and

25
26
G.    All further relief as the Court deems appropriate.

27
28

**CLASS ACTION COMPLAINT**

DATED: February 18, 2015      **SEEGER WEISS LLP**


By: /s/ Jonathan Shub
    Jonathan Shub

    Jonathan Shub (SBN 237708)
    SEEGER WEISS LLP
    1515 Market St, Suite 1380
    Philadelphia, PA 19102
    Telephone: (215) 564-2300
    Facsimile: (215) 851-8029
    Email: jshub@seegerweiss.com

    Gregory F. Coleman (TN 014092)
    Lisa A. White (TN 026658)
    GREG COLEMAN LAW PC
    Bank of America Center
    550 Main Avenue, Suite 600
    Knoxville, TN  37902
    Telephone: (865) 247-0080
    Facsimile: (865) 522-0049
    Email: greg@gregcolemanlaw.com
           lisa@gregcolemanlaw.com
    *Pro Hac Vice to be filed.*

    Shanon J. Carson (PA 85957)
    Glen L. Abramson (PA 78522)
    **BERGER & MONTAGUE, P.C.**
    1622 Locust Street
    Philadelphia, PA 19103
    Telephone: (215) 875-4656
    Facsimile: (215) 875-4604
    Email: scarson@bm.net
           gabramson@bm.net
    *Pro Hac Vice to be filed*

    Jamie Weiss
    Richard J. Burke
    QUANTUM LEGAL LLC
    513 Central Ave., Suite 300
    Highland Park, IL 60035

**CLASS ACTION COMPLAINT**

(847) 433-4500
*Pro Hac Vice to be filed*


*Counsel for Plaintiff and the Class*

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury in the instant action.


DATED:  February 18, 2015                **SEEGER WEISS LLP**


By /s/ Jonathan Shub
Jonathan Shub

*Counsel for Plaintiff and the class*

**CLASS ACTION COMPLAINT**