UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRETT GRASSI, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>INTERNATIONAL COMFORT PRODUCTS, LLC,<br><br>        Defendant. | No. 1:15-cv-00253-JAM-JLT<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS** |

    Defendant International Comfort Products, LLC ("Defendant") promptly provided a replacement for a failing part in Plaintiff Brett Grassi's ("Plaintiff") air conditioning unit free of charge. Although these actions in fact complied with Defendant's warranty, Plaintiff brought this class action complaint alleging violations of warranties and consumer protection laws. Because Defendant adequately performed on its valid warranty and Plaintiff was not misled by any misinformation about the product, the Court dismisses each of Plaintiff's claims.[1]

---

[1] This motion was determined to be suitable for decision without

1

1          I.   FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

2         Plaintiff bought a new home containing an air conditioning
3    unit ("HVAC") manufactured by Defendant.  FAC ¶ 51.  The unit
4    worked properly for two years, then "stopped blowing cold air."
5    FAC ¶ 54.  Plaintiff alleges that the failure resulted from a
6    leak in the unit's copper coil.  FAC ¶ 55.  The leak allegedly
7    resulted from "formicary corrosion" when the copper was exposed
8    to certain indoor pollutants regularly found in residential
9    houses.  FAC ¶¶ 34, 39-43.  According to reports referenced in
10   the FAC, "the occurrence rate of these [copper coil] failures is
11   low nationwide[.]"  FAC ¶ 41 (alteration in original).

12        "Soon" after Plaintiff discovered the problem, Defendant
13   replaced the coil with an aluminum coil – which, unlike copper,
14   is "not susceptible to formicary corrosion."  FAC ¶¶ 34, 58.
15   Defendant informed Plaintiff that it would cover the cost of the
16   part.  FAC ¶ 56.  Plaintiff paid to diagnosis the problem and
17   labor to install the new coil, but the home builder agreed to
18   reimburse Plaintiff for half these costs: $521.50.  FAC ¶¶ 57-58.

19        At the time of repair, the unit was covered by Defendant's
20   "parts" warranty, which stated:

21        International Comfort Products, LLC ("ICP") warrants this
          product against failure due to defect in material or
22        workmanship under normal use and maintenance as follows.
          . . .   If a part fails due to defect during the applicable
23        warranty period ICP will provide a new or remanufactured
          part, at ICP's option, to replace the failed defective part
24        at no charge for the part."

25   Defendant's RJN Exh. A at 1; FAC ¶¶ 81-82.

26        Despite the fact that Plaintiff apparently experienced no

27   ─────────────────────────
     oral argument.  E.D. Cal. L.R. 230(g).  The hearing was
28   scheduled for August 5, 2015.

                                    2

further problems with his air conditioning, he sued Defendant in a class action complaint (Doc. #15) alleging nine causes of action: (1) Violation of the California Consumer Legal Remedies Act ("CLRA"); (2) Violation of Unfair Competition Law ("UCL"); (3) Violation of the California False Advertising Law ("CFAL"); (4) Breach of the implied covenant of good faith and fair dealing; (5) Breach of the implied warranty of merchantability under the Song-Beverly Consumer Warranty Act; (6) Breach of express warrant; (7) Unjust enrichment; (8) Fraudulent concealment; and (9) Declaratory relief.  Plaintiff alleged federal diversity jurisdiction under the Class Action Fairness Act.  FAC ¶ 7.

Defendant now moves to dismiss each of Plaintiff's claims (Doc. #26).  Plaintiff opposes the motion, except as to his fourth cause of action (Doc. #42).  The Court therefore dismisses the claim for breach of the implied covenant of good faith and fair dealing, and addresses the parties' arguments on the viability of Plaintiff's other causes of action below.

## II.   OPINION

### A.   Judicial Notice

As an initial matter, Defendant requests judicial notice of two documents: Defendant's written limited "parts" warranty and the pleadings in another case, Sumer v. Carrier Corporation, filed in the Northern District of California.  Defendant's RJN at 2.  Because Plaintiff apparently agrees that the first document is the written express warranty at issue in the FAC, see FAC ¶¶ 81-82; Opp. at 5, the Court considers the document to be

incorporated by reference into Plaintiff's FAC, see Tietsworth v. Sears, 720 F. Supp. 2d 1123, 1131 (N.D. Cal. 2010) ("[T]he actual terms of the one-year limited warranty, [] properly may be considered under the incorporation by reference doctrine . . . .") (collecting cases).

Plaintiff opposes judicial notice as to the second document: the Sumer pleadings. Opp. at 11-12. The Court takes judicial notice of the fact that pleadings were filed in that case – as they are in the public record – but does not take statements in those pleadings as true or use their exhibits as evidence. See Harris v. Cnty. of Orange, 682 F.3d 1126, 1132 (9th Cir. 2012) (noticing "matters of public record, including documents on file in federal or state courts") (citation omitted); Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001) (reiterating that a court "may not take judicial notice of disputed facts stated in public records") (emphasis in original); M/V Am. Queen v. San Diego Marine Const. Corp., 708 F.2d 1483, 1491 (9th Cir. 1983) ("As a general rule, a court may not take judicial notice of proceedings or records in another cause so as to supply, without formal introduction of evidence, facts essential to support a contention in a cause then before it.").

B. Analysis

1. Express Warranty

Defendant argues that it complied with its warranty, therefore precluding Plaintiff's express warranty claim. Mot. at 4. Plaintiff contends that Defendant in fact breached its warranty, and even if it did not, the warranty was unconscionable and invalid. Opp. at 5-8. The Court agrees with

4

Defendant.

"A manufacturer's liability for breach of an express warranty derives from, and is measured by, the terms of that warranty." Stearns v. Select Comfort Retail Corp., 763 F. Supp. 2d 1128, 1144 (N.D. Cal. 2010) (quoting Cipollone v. Liggett Group, Inc., 505 U.S. 504, 525 (1992)). A plaintiff must plead the exact terms of the warranty. Id. at 1142.

The FAC here identifies a "five-year limited 'parts' warranty" that covered the replacement part, but did not cover "the cost of labor to replace the defective coil" or other "associated costs for diagnostics, inspection and refrigerant replacement[.]" FAC ¶¶ 81-82; Defendant's RJN Exh. A. For the first time in his brief, Plaintiff points to another warranty provision entitled "No Hassle Replacement™ limited warranty." Opp. at 5. That warranty apparently went further and promised to replace the entire HVAC unit if "the evaporator coil failed due to defect[.]" Opp. at 5:15-16.

The Court disregards the No Hassle warranty terms, because Plaintiff never mentioned it in the FAC, and moreover, it likely did not apply to Plaintiff. See Opp. at 5:17-18 (declining to advise whether this warranty applied, and instead stating hypothetically that "[i]f this warranty also applied" then Defendant would have breached it); Defendant's RJN Exh. A at 1 (showing that this "No Hassle Replacement™ limited warranty" only applied to a subset of HVAC units).

Measuring this case by the terms of the "parts" warranty then, Defendant fulfilled its obligations. That is, it replaced the part that failed (i.e., the coil) "at no charge for the

1  part." See Defendant's RJN Exh. A at 1; Opp. at 5.  The
2  opposition brief contends that "Plaintiff contests whether
3  [Defendant] charged Plaintiff or the builder for the replacement
4  coil."  Opp. at 5 n.3, 6.  Yet this allegation appears nowhere in
5  the FAC, and the FAC in fact resolves that issue in Defendant's
6  favor: Defendant allegedly "stated to Plaintiff that they [sic]
7  would cover the cost of the replacement coil itself," and the
8  only costs Plaintiff alleges are in regards to the labor to
9  inspect and replace the part.  FAC ¶¶ 55-58.
10      Plaintiff also contends that Defendant's replacement of the
11 part was "ineffective."  FAC ¶ 106.  But the FAC's other
12 allegations contradict that statement.  In particular, the FAC
13 states that Defendant replaced the defective copper coil with an
14 aluminum coil, which – according to the FAC – "is not susceptible
15 to formicary corrosion[.]"  FAC ¶¶ 34, 58.  Plaintiff's
16 allegations thus establish that Defendant fully performed on the
17 warranty.
18      Plaintiff next argues that Defendant failed to perform as
19 required by yet a different sentence (or rather, a fragment of a
20 sentence) in the same warranty provision.  See Opp. at 6
21 (alleging that Defendant violated warranty "against failure due
22 to defect in materials or workmanship under normal use and
23 maintenance").  The full context of that snippet indicates that
24 the language refers to the same promise discussed above – which
25 Defendant performed on by replacing the coil.  See Defendant's
26 RJN Exh. A at 1 ("International Comfort Products, LLC ('ICP')
27 warrants this product against failure due to defect in material
28 or workmanship under normal use and maintenance as follows.

1   [Sentence describing duration of warranty.]  If a part fails due
2   to defect during the applicable warranty period ICP will provide
3   a new or remanufactured part, at ICP's option, to replace the
4   failed defective part at no charge for the part.").

5   In an attempt to bolster his reliance on the sentence
6   fragment, Plaintiff cites Gustafson v. Goodman Manuf. Co., 2014
7   WL 1669069 (D. Ariz. Apr. 28, 2014).  But that case is
8   distinguishable.  Although it involved a very similar "parts"
9   warranty for an air conditioning unit, the unit in that case
10  failed twelve times, followed by twelve separate replacements of
11  the coil.  Id. at *1.  The Gustafson defendant apparently never
12  resolved the issue, because the plaintiff eventually purchased a
13  bi-annual maintenance agreement to have his unit continuously
14  repaired.  Id.  Here, in contrast, Defendant fully and
15  permanently repaired Plaintiff's unit on the first try.  See FAC
16  ¶¶ 34, 55-58.

17  Plaintiff moves on from trying to find a hole in Defendant's
18  performance, and next argues that even if Defendant complied with
19  the stated terms of the warranty, the warranty was nonetheless
20  invalid.  See FAC ¶¶ 81-85.  Each of Plaintiff's three theories
21  of invalidity fail.

22  Plaintiff first asserts that the warranty was invalid
23  because it contradicted itself.  Opp. at 7.  Plaintiff does not
24  explain, and the Court does not see, how the warranty terms
25  "negat[ed] [its] express description[s]."  See Opp. at 7:26.

26  Next, Plaintiff argues that the warranty "fail[ed] in its
27  essential purpose" because the product is "destroyed by [its] own
28  flaws[.]"  Opp. at 8.  As described above, this argument is

7

1  unpersuasive because the FAC establishes that Defendant fully
2  repaired Plaintiff's HVAC unit by replacing the failed part with
3  a functioning part.
4      Finally, Plaintiff contends that the warranty was
5  unconscionable. Opp. at 8-9. To succeed in this argument,
6  Plaintiff must show that the warranty was both procedurally and
7  substantively unconscionable. Marchante v. Sony Corp. of Am.,
8  Inc., 801 F. Supp. 2d 1013, 1022 (S.D. Cal. 2011). The warranty
9  was not procedurally problematic; Plaintiff is incorrect in
10 contending that the warranty resulted from "a complete inequality
11 of bargaining power." See Opp. at 9 n.4. Indeed, the FAC
12 alleges that Plaintiff had the option of "insist[ing] on the
13 installation of a different brand of HVAC system[.]" FAC ¶ 64;
14 see Tietsworth, 720 F. Supp. 2d at 1139 (finding no procedural
15 unconscionability because complaint demonstrated that "other
16 machines were available to Plaintiffs"). Nor was it
17 substantively unconscionable, because the terms in no way "shock
18 the conscience." See Sumer v. Carrier Corp., 2015 WL 758314, at
19 *1 (N.D. Cal. Feb. 20, 2015) (concluding that this same "parts"
20 warranty was not unconscionable).
21     Based on the allegations in the FAC, the warranty was valid
22 and Defendant fully complied with its relevant terms. The Court
23 therefore dismisses Plaintiff's express warranty claim with
24 prejudice.
25         2. Implied Warranty
26     The parties disagree as to whether the malfunction in
27 Plaintiff's HVAC unit falls within the one-year life of the
28 implied warranty of merchantability. See Cal. Civ. Code.

8

§ 1791.1(c); Mot. at 10; Opp. at 10. Defendant asserts that Plaintiff's claim fails because his HVAC unit did not malfunction until two years after he purchased the home. See FAC ¶¶ 51, 55. Plaintiff in response characterizes the copper coil as a "latent defect" that rendered the unit unmerchantable at the time of sale, even though the problem did not manifest for two years. Opp. at 10.

The parties point the Court to Mexia v. Rinker Boat Company, Inc., 174 Cal.App.4th 1297 (2009) – which held that a delayed malfunction arising from a latent defect can fall within the one-year time limit – and a number of cases disagreeing about whether to follow Mexia. Opp. at 10; Reply at 6-7. The Court finds it unnecessary to decide whether to follow Mexia, because even if it does, Plaintiff's argument still fails.

In particular, Mexia requires a plaintiff to show that the product "became unfit during the warranty period." Jones v. Credit Auto Ctr., Inc., 237 Cal.App.4th Supp. 1, 10 (2015). "[I]t is the defect itself, rather than some theoretical imperfection, that must exist during the warranty period, and that defect must be so severe as to cause the product to fall below the 'minimum level of quality' guaranteed by the warranty." Parenteau v. Gen. Motors, LLC, 2015 WL 1020499, at *11 (C.D. Cal. Mar. 5, 2015). Falling below the minimum level of quality means the product "did not possess even the most basic degree of fitness for ordinary use." See Viggiano v. Hansen Natural Corp., 944 F. Supp. 2d 877, 896 (C.D. Cal. 2013) (citation and quotation marks omitted).

Plaintiff has not made such a showing here. He alleges

that his HVAC unit contained a copper coil, which had a "low" "occurrence rate" of causing corrosion, leading to leakage of refrigerant. FAC ¶¶ 21, 41. The unit functioned properly for over two years. See FAC ¶¶ 51, 55. Then, "[s]oon" after the malfunction, Defendant fixed the problem by replacing the coil with an aluminum one, which was "not susceptible to formicary corrosion[.]" FAC ¶¶ 34, 58. Defendant's product thus meets at least the "minimum level of quality." See Sumer, 2015 WL 758314, at *1 (rejecting nearly identical implied warranty claim for copper coil defect). The Court dismisses the implied warranty claim with prejudice, because the FAC establishes that Defendant complied with the implied warranty.

### 3. CLRA

Defendant argues that the Court should dismiss Plaintiff's CLRA claim because he does not explain what statements he saw before purchase and cannot plead reliance. Mot. at 14. The Court agrees.

The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices[.]" Cal. Civ. Code § 1770(a). A CLRA claim may be premised on either an affirmative misrepresentation or a material omission that "deceive[s] reasonable consumers." Doe v. SuccessfulMatch.com, 70 F. Supp. 3d 1066 (N.D. Cal. 2014). A plaintiff must plead reliance on the misrepresentation or omission. Princess Cruise Lines, Ltd. v. Superior Court, 179 Cal.App.4th 36, 46 (2009). To show reliance, the misrepresentation must relate to the allegedly defective part. See Tietsworth v. Sears, 720 F. Supp. 2d 1123, 1138 (N.D. Cal. 2010) (dismissing CLRA claim for misrepresentations, because

1   the "affirmative representations pled in the SAC are either
2   puffery or do not relate to the Machine's allegedly defective
3   Electronic Control Boards").  Under an omission theory, the
4   plaintiff must show that he "would have been aware" of the
5   omitted information.  Jekowsky v. BMW of N. Am., LLC, 2013 WL
6   6577293, at *5 (N.D. Cal. Dec. 13, 2013).

7        Plaintiff here appears to allege both a misrepresentation
8   and an omission – namely, that Defendant advertised its products
9   to be "of a particular quality which they are not" and that it
10  failed to disclose the corrosion problem.  See FAC ¶ 89.  But
11  both theories fail, because Plaintiff cannot plead any actual
12  reliance.  First, none of the misrepresentations alleged in the
13  FAC relate to the defective coils, but rather are general
14  statements about the HVAC machine.  See FAC ¶¶ 41, 50.  As to the
15  alleged omission, Plaintiff has not explained how he would have
16  been aware of the information about the coils even if Defendant
17  had disclosed it.  Indeed, Plaintiff does not explain what
18  information he reviewed about this particular HVAC unit before
19  purchasing his house, or even whether he knew what kind of air
20  conditioning unit the house contained.

21       Plaintiff bases the omission claim on certain written
22  information provided to him about the unit.  See Opp. at 16; FAC
23  Exhs. D & E (containing "Installation Instructions" and
24  "Homeowner's Information").  But according to the FAC, he
25  received this information "[a]long with his HVAC unit[.]"  FAC
26  ¶¶ 52-53.  Therefore, Plaintiff was not aware of this information
27  before he purchased the house, and – even if it contained the
28  proper disclosures – it could not have changed his decision about

whether to buy his house or how much to pay for it.  See FAC ¶ 64.  See also Sumer v. Carrier Corp., 2015 WL 3630972, at *2-*3 (N.D. Cal. June 10, 2015) (rejecting CLRA claim based on nearly identical theory in part because "this particular plaintiff never read" the statements allegedly misrepresenting and omitting information about the coils).

Plaintiff argues that a relaxed standard should apply for pleading an omission and that reliance should be "presumed." Opp. at 14-16.  But these arguments are irrelevant, because the FAC itself forecloses a claim of reliance in stating that Plaintiff only received the allegedly deficient documents after he purchased the home.  See FAC ¶¶ 52-53.

Because Plaintiff has identified no misrepresentations about the coils, and because he would not have been aware of any omitted warning (had it been disclosed), the Court dismisses Plaintiff's CLRA claim with prejudice.  Given this conclusion, the Court does not reach the parties' further arguments about whether Defendant did actually disclose the problem to consumers and whether the alleged misrepresentations were mere puffery. Mot. at 11-15.

### 4. CFAL

Defendant argues that it cannot be liable for false advertising because the alleged statements forming the basis for this claim are mere puffery.  Mot. at 15.  Plaintiff counters that his allegations include "quantifiable statements of fact." Opp. at 7:3.  Defendant's argument is correct.

A CFAL claim fails if the alleged advertising statements are puffery.  In re Song Grand Wega KDF-E A10/A20 Series Rear

Projection HDTV Television Litig., 758 F. Supp. 2d 1077, 1089 (S.D. Cal. 2010).  The statements alleged in this case are that the HVAC units were "manufactured to some of the industry's toughest standards and are covered by some of the best warranties in the industry."  FAC ¶ 41; Opp. at 7.  These statements are indeed puffery.  See, e.g., Fisher v. Monster Beverage Corp., 2013 WL 4804385, at *13 (C.D. Cal. July 9, 2013) (collecting cases identifying nonactionable puffery, including averments that a product is the "best technology," the best in the world, the "best quality ever," or is the "best mortgage rate possible," or that a company provides "better customer service" than its competitor); Tietsworth, 720 F. Supp. 2d at 1137 ("To the extent that Plaintiffs base their claim on the representations that Defendants did make, for example that the Machines were 'designed, manufactured and tested for years of dependable operations,' such representations are mere puffery . . . .").  See also Sumer, 2015 WL 758314, at *2 ("Carrier's general statements about the reliability and quality of its evaporator coils are non-actionable puffery.").  Plaintiff's CFAL claim therefore fails.

### 5. Fraudulent Concealment

Plaintiff's claim for fraudulent concealment fails for the same reasons as his CLRA claim.  That is, he cannot show that he relied on any misinformation.  See Sumer, 2015 WL 3630972, at *1-*2 (rejecting similar claim for lack of reliance).

### 6. UCL

Plaintiff alleges that Defendant violated the unlawful and unfair prongs of the UCL.  FAC ¶ 98.  He cannot maintain this

13

1   claim under the unlawful prong, because as described above, this
2   Court has rejected all of Plaintiff's predicate claims.  See
3   Jordan v. Paul Fin., LLC, 745 F. Supp. 2d 1084, 1098 (N.D. Cal.
4   2010).
5       His claim for unfair practices fares no better.  Plaintiff
6   bases that claim on "promises that [the HVAC units were]
7   'durable, reliable, and easier to install and maintain.'"  FAC
8   ¶ 104.  This alleged "promise" is puffery that cannot support a
9   UCL claim.  In re Sony Grand Wega, 758 F. Supp. 2d at 1089.  He
10  also bases the claim on the allegation that the coil replacement
11  was "ineffective and merely delayed the ultimate complete failure
12  of the HVAC unit[]."  FAC ¶ 106.  But that statement is fatally
13  contradicted by the FAC's other allegations, namely that
14  Defendant provided an aluminum coil, thus solving the corrosion
15  problem.  See FAC ¶¶ 34, 58.  Plaintiff's UCL claim therefore
16  fails in its entirety.

17          7. Unjust Enrichment

18      The parties contest whether unjust enrichment is a viable
19  cause of action.  Mot. at 19-20; Opp. at 20 (citing Johnson v.
20  Harley-Davidson Motor Co. Grp., LLC, 2011 U.S. Dist. LEXIS 80011
21  (E.D. Cal. July 22, 2011)).  Even assuming that it can be a cause
22  of action, it fails here because Plaintiff has not adequately
23  pled any predicate claim.  See Johnson, 2011 U.S. Dist. LEXIS
24  80011, at *18 ("Unjust enrichment [] is not a separate cause of
25  action, but depends upon the viability of the other claims.
26  Since Plaintiffs plead viable claims for strict products
27  liability, unfair business practices, fraudulent business
28  practices, negligent design, breach of warranty, and violations

of the CLRA, the unjust enrichment claim survives as an alternative theory of recovery.") (citing <u>Sanders v. Apple, Inc.</u>, 672 F. Supp. 2d 978, 989 (N.D. Cal. 2009)).

       8. <u>Declaratory Relief</u>

Plaintiff bases his declaratory relief claim on the "actual controversy . . . regarding marketing and sale of [Defendant's] defective HVAC units." FAC ¶ 157. As described above, there is no "actual controversy" because Plaintiff has failed to state any claim on which relief could be granted. The Court dismisses this claim as well.

### III. ORDER

For the reasons set forth above, the Court GRANTS WITH PREJUDICE Defendant's motion to dismiss all of Plaintiff's claims.

IT IS SO ORDERED.

Dated: August 13, 2015

_____
JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE

15